BRESNAHAN et al. v. TRIPP GIANT LEVELLER CO. (two cases).

FULLER et al. v. SAME.

(Circuit Court of Appeals. First Circuit. June 5, 1900.)

Nos. 327, 328, 331.

1. PATENTS—CONSTRUCTION OF CLAIMS.

The claims of a patent should be construed, where they reasonably may be, to cover the entire invention of the patentee; and where a patent contains several claims, some of which are limited to details, the others are, prima facie, not to be restricted by insisting that they contain, as necessary elements, the particulars which are specifically covered elsewhere.

2. SAME—INFRINGEMENT—MACHINE FOR BEATING OUT SHOE SOLES.

In the Cutcheon patent, No. 384,893, for improvements in machines for beating out the soles of boots and shoes, claim 1 is confined to that portion of the mechanism which lies between the actuating jacks and the crank shaft; and infringement of such claim is not avoided by the substitution of mechanism different from that described in claim 4, between the crank shaft and the source of power.

3. SAME—SUIT FOR INFRINGEMENT.

The fact that a defendant is merely a user of infringing machines, and not a manufacturer, does not affect the right of complainant to a preliminary injunction, unless under exceptional circumstances, as where it appears that his general market is not jeopardized, and that he can be made entirely good by the payment of damages equivalent to a license fee. Westinghouse Air-Brake Co. v. Burton Stock-Car Co., 77 Fed. 301, 23 C. C. A. 174, distinguished.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Frederick P. Fish and William Quinby, for appellants.
Causten Browne and Alexander P. Browne, for appellee.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. These are appeals from decretal orders granting ad interim injunctions in suits on a patent for an invention. The only question relates to infringement, and this depends on the extent of the patentee's invention, and the construction to be given to the claim in issue. Consequently the general rules which govern us are those stated by this court in Hatch Storage-Battery Co. v. Electric Storage-Battery Co. (C. C. A.; in an opinion passed down on March 16, 1900) 100 Fed. 975.

There is so much literature in the courts in this circuit with reference to the patent in suit, that we need not state the facts at length. The only claim in issue is the first one, as follows:

"(1) A machine for beating out the soles of boots and shoes, provided with two jacks, two molds, and means, substantially as described, having provision

for automatically moving one jack in one direction while the other is being moved in the opposite direction, whereby the sole of the shoe upon one jack will be under pressure, while the other jack will be in a convenient position for the removal of the shoe therefrom."

For the proper construction of this claim, it will be necessary to refer to claim 4, as follows:

"(4) In a machine for beating out the soles of boots and shoes, the combination of a mold or die; a vertically-movable jack; a crank; a toggle mechanism connecting said crank and jack, and having provision for the movement of the latter; a crank-shaft; a cam secured to said crank-shaft, and provided with an abrupt shoulder; a driving-shaft; gearing for connecting said crank-shaft and said driving-shaft; a rocker-shaft; a stop-arm secured to said rocker-shaft, and engaging with the shoulder upon said cam to stop the machine; a treadle secured to said rocker-shaft; a spring connecting said treadle with a stationary part of the machine; a brake-shoe operated by said treadle, and acting upon said brake-wheel; and a suitable clutch mechanism for applying power to the driving-shaft when the shoe has been released from contact with the brake-wheel, and the stop-arm has been disengaged from the shoulder of said cam."

Claim 1 has relation, by its express terms, to that part of the machine which has a duplicated mechanism. Claim 4 has relation to a part of the machine which does not necessarily involve a duplicated mechanism. Each claim may well cover a distinct invention. To hold that claim 1 necessarily involves the details which are set out in claim 4, which details may be used in a machine with only one jack and one mold, would be to so limit claim 1 that in effect it would be no broader than claim 4. This is practically the substance of the contention of the appellants. If the patentee's invention is broader than that set out in claim 4, the limit which the appellants thus seek to place on claim 1 would be contrary to the rule so steadily applied in this circuit, that claims ought to be construed, where they reasonably may be, to cover the entire invention of the patentee. The contention is also opposed to the general rule of construction, applicable where there are several claims, to the effect that, if some of the claims are limited to details, those which remain are prima facie not to be fettered by insisting that they contain, as necessary elements, the particulars which are specifically covered elsewhere.

An examination of the history of the decisions of this court with reference to this patent will show that these rules have been applied by us to the construction of claim 1, and that we have not understood that claim 1 has relation to the mechanism which lies between the crank-shaft spoken of in claim 4 and the source of power. Without detailing the features as to which the appellants claim that their machine differs from the machine covered by the patent in suit, it is sufficient to say that they all relate to the portion last named, and not to those elements which lie between the crank-shaft and the jacks, and which secure the simultaneous motion of one jack in one direction while the other is being moved in the opposite direction, as pointed out in claim 1.

The first decision to which we need refer is that of the circuit court, passed down on September 9, 1892, in Cutcheon v. Herrick (C. C.) 52 Fed. 147, 148. In that case there was a decree for the complainant. The case came before this court on appeal in Herrick v. Leveller Co., 8 C. C. A. 475, 60 Fed. 80, where the opinion was passed down on October 12, 1893. There the decree of the court below was affirmed in a per curiam, which adopted its opinion. Those opinions were expressed in such general terms that a question arose with reference to the construction of claim 1, which came before this court again in Bresnahan v. Leveller Co., 19 C. C. A. 237, 72 Fed. 920, where an opinion was passed down on February 14, 1896. We said, at pages 923, 924, 72 Fed., and page 241, 19 C. C. A., as follows:

"Claim 1 of the patent in suit is a very broad one, and, as we held it valid, it would seem that no method of making the connection between the actuating jacks and the crank-shaft, by means well known in the arts at the date of the patent, would evade it. We are also unable to perceive that the discussion in relation to the treadles and their connections is pertinent, as there is nothing in the letter of claim 1, or in the opinions of either this court or the circuit court in the former case, which makes any automatic stop movement, or any other stop movement, an element." "There was nothing in that case in either court which called for any elements except those stated in the claim; and these, as explained by the circuit court in the extract we have made from its opinion, cover the first device in which both of the operations of compressing and clearing were performed automatically, and specify no elements, except two jacks, two molds, and means for automatically moving one jack in one direction while the other is being moved in another direction."

Then we proceeded to show that the words in claim 1, "substantially as described," did not effectually limit it. The patent was again before us in Bresnahan v. Leveller Co. (C. C. A.) 99 Fed. 280, where, in an opinion passed down on January 10, 1900, we firmly adhered to what we had before determined, and stated that the new proofs then before us "should not narrow the claim as interpreted in" our prior decisions.

There is nothing indefinite in the extracts we have given from our opinions, except the fact that the relations of the word "automatically" in claim 1 were not, in terms, explained, although we think they can be gathered from what we said, so far as the word relates to that claim. The appellants insist that this word, as used in this claim, relates to the entire mechanism, intervening between the treadle with which the machine is started, and the lasts; but there is nothing which necessitates this construction. It is plain, on examining our opinion in Bresnahan v. Leveller Co., that we regarded the pith of claim 1 as relating to the "method of making the connection between the actuating jacks and the crank-shaft." We stated that we were unable to perceive that the discussion in relation to the treadles and their connections was pertinent, and this was not limited by the fact that we afterwards referred to the stop movement, which had been particularly brought to our attention. Very few machines are perfectly automatic. Occasionally we have had before us a machine in which the mere presentation of the blank to be worked on caused the mechanism to commence its operation

and complete it, and then to cease operating, all without any other human intervention; but neither of the machines now before us is automatic, in the entire sense of the word, notwithstanding the contention of the appellants to the contrary. In the patented machine, when constructed with all the details described in the specification and covered by all the claims, not only must the work be presented to the machine, but human intervention is necessary at the treadle to set the machine in operation every time a blank is introduced for compression. It follows that in this machine the word "automatically" is not used in such a strict sense that it may not yield to a just construction of the claims; and therefore it may as well be applied to any part of the patented machine as to the whole of it, when necessary to give full effect to the invention. In the appellants' machine, the portions to which claim 4 relates are so constructed as to require the constant intervention of human agency at the treadle during the entire round of operation. This, however, has no relation to the mechanism between the crank-shaft and the jacks, because, so far as that part of the appellants' machine is concerned, it has "provision for automatically moving one jack in one direction while the other is being moved in the opposite direction," all substantially as described in the patentee's specification, and as covered by claim 1. This "provision" consists of the crank-shaft, with a pair of toggles, or their equivalent, and the incidental details of each, all of which constitute the "means substantially as described" in the claim.

As, therefore, in our previous opinions we have sustained the validity of claim 1, and held it to be broad, and given it substantially the same effect as we now give it, there was not only sufficient in the prior litigation, according to the rules applicable under these circumstances, to justify the court below in granting the injunctions now appealed against, but there was enough, in view of the necessity of giving patents protection during their short terms of existence, to require that the court should have entered the decretal orders which it did enter.

One or more of the pending suits out of which these appeals arose were brought against infringers who were simply users, having purchased machines from the infringing manufacturers. Under these circumstances, these parties rely on the principles announced in Westinghouse Air-Brake Co. v. Burton Stock-Car Co., 23 C. C. A. 174, 77 Fed. 301, decided by this court on October 9, 1896. An examination of the opinion in that case will show that the circumstances which the court relied on were peculiar. The same was the fact with reference to the other citations made to us by the appellants, the most important of which were referred to in the opinion filed in the circuit court in the same case (Westinghouse Air-Brake Co. v. Burton Stock-Car Co. [C. C.] 70 Fed. 619), where it was shown, moreover, that there was no danger that that complainant could not be made entirely good by the payment of damages equivalent to a license fee. There was nothing to indicate that that complainant's market was jeopardized in any general sense. To apply decisions in such special cases to ordinary users would be to destroy the patentee's

market, and to ignore the recognized rules which the equity courts so frequently apply in order to protect the substantial values of patents by using in their behalf ad interim injunctions.

In each case the judgment is as follows:

The decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellee.