## OREGON WOODENWARE MFG. CO. v. MURRAY.

(District Court, W. D. Washington, N. D.   July 20, 1914.)

No. 22.

1. PATENTS (§ 312*)—INFRINGEMENT—PRESUMPTION.

While the presumption is that a patented device does not infringe an earlier patent, it is not conclusive.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*]

2. PATENTS (§ 165*)—INFRINGEMENT—CONSTRUCTION OF CLAIMS.

The claims of a patent are to be construed separately to ascertain whether there is an infringement, even where one is broader and more general than others, which more specific claims may be included in the more general.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—IRONING BOARD.

The Springer patent, No. 1,012,468, for an ironing board, discloses invention and utility; also *held* infringed.

In Equity.   Suit by the Oregon Woodenware Manufacturing Company against Gilbert V. Murray, doing business as the Eureka Woodenware Company.   On final hearing.   Decree for complainant.

William R. Litzenberg, of Portland, Or., for complainant.

John P. Hartman and Arthur E. Nafe, both of Seattle, Wash., for defendant.

CUSHMAN, District Judge.   Suit is brought by complainant, holding, by assignment, the Aaron M. Springer patent No. 1,012,468, issued December 19, 1911, for a certain folding ironing board.   Complainant alleges infringement by defendant, who has answered, assailing the validity of complainant's patent, denying infringement, and averring that the ironing board made by him is in conformity with letters patent No. 1,036,887, issued to him August 27, 1912.

The evidence shows invention, novelty, and utility in the Springer

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

patent, independently of the presumption arising from the issuance of the patent. It is therefore unnecessary to consider the question of whether defendant is estopped to deny their existence.

The Springer patent is of a secondary nature, as the advance of the art has been gradual. The claims thereunder should therefore be strictly construed.

There are certain minor changes in the Springer board, as now made, not covered by the patent, but these are mere improvements that have been evolved in the course of manufacture, do not affect the mechanical principles involved, and do not constitute abandonment. These changes and their effect may show an increased utility in the board, but they do not establish that the board, without them, was wanting in utility. In the Springer board, a pair of substantially vertical legs are pivotally connected to the ironing board itself, near one end thereof. The most striking difference between the Springer board and those which preceded it in the art is the fact that to these legs all of the other major members of the structure are pivotally connected, by which means other members found in the prior art are eliminated, simplifying the structure. While all of the separate elements were known to the prior art, the combination was new, and possessed obvious advantages, entitling it to patent. This arrangement is one form of truss structure. The truss structure will be found frequently used in the prior art, but not in this combination. Rigidity, compactness, facility in folding, and lightness, with sufficient strength for practical use, together with other advantages, were accomplished in the Springer board. A portion of these advantages over the former art were undoubtedly accomplished by the exercise of ordinary mechanical skill, as in the selection and use of lighter materials in better proportion; but not all were so accomplished. A part is the result of invention.

This result was brought about generally by the arrangement above noticed, and particularly by means of a brace member which, when the board is in use, holds the inclined leg, which is pivotally connected to the top of the substantially vertical legs, in place, with its foot resting under the clear end of the board. This brace member, not only holds the inclined leg in position with relation to the vertical legs, but, by being pivotally connected to the vertical legs at the point where the thrust of a brace, detachably connected to the lower side of the table top towards its clear end, exerts the force derived from the weight of the table top and the ironing operations thereon, and transfers such force and the weight derived therefrom in due proportion to the foot of the inclined leg. This brace member, attached to the inclined leg, is composed of two parts connected so as to permit the whole structure to be folded compactly.

[1] The ironing boards shown to have been made by the defendant are in accordance with his letters patent. While the presumption is that he is not infringing complainant's patent, it is not conclusive. Holliday v. Pickhardt (C. C.) 12 Fed. 147; Brainard v. Cramme (C. C.) 12 Fed. 621; Holly v. Vergennes Mach. Co. (C. C.) 4 Fed. 74, 18 Blatchf. 327; Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017.

There are two claims in the Springer patent. In the first claim, this brace member is described as:

"Said last-mentioned brace being formed of two relatively movable sections and serving to limit the spreading apart of the lower ends of said legs."

And in the second claim as:

"Said last-mentioned brace being formed of two pivotally connected sections and serving to limit the spreading apart of the lower ends of said legs."

In the manufacture of the boards under the Springer patent, no other connection between the parts of this brace than pivotal has been used.

In the Murray patent, in the first claim, this brace member is described as:

"A pair of tie rods connecting said upright legs with said arm."

And in the second claim as:

"A pair of tie rods, connecting said upright legs with said arm, said tie rods being each formed of two slidably connected parts."

In the manufacture of the boards by defendant, the two sections of this brace, or tie rod, instead of being pivotally connected and "buckling" when the board is folded, as the Springer board is made in compliance with the second claim of claimant's patent, they slide together upon themselves, being prevented from pulling apart, or extending beyond the desired point, by each section having a luglike inner end. It is not claimed that this arrangement is an infringement under complainant's second claim, but that it is of the first, wherein the brace is described as being "formed of two relatively movable sections." It is clear that the two parts, sliding upon one another, are relatively movable. In order for them to slide upon one another, each must move in relation to the other one, both might retain the same relative position to the rest of the structure, and, in regard to it, be described as immovable, but, in sliding one upon the other, their relation to each other is changed, as the parts of each approach and recede from the other, and they are therefore relatively movable. That such is the case is shown by the following from defendant's brief:

"The bottom brace of the alleged infringing device is seen to consist in a pair of tie rods each comprised of two members, 16 and 17, connected at one of their ends with the vertical legs and the inclined leg, respectively, and which are coupled together at their opposite ends in slidable relation by means of a plate extremity, 18, upon each which are each provided with a rectangular lug through which the other rod member is slidably engaged. Said plates abut together to limit the extension of said tie rods and a separation of the lower extremities of the table legs. When the legs are folded together, however, the rod members slide past each other and permit of the closing of the board.

"The construction of such tie rods are thus seen to consist of two relatively movable members, that is to say, members which are slidably movable, but not pivotally movable, the construction and mode of operation being widely different from that embodied in the Springer board and disclosed in the patent in suit."

The end of the tie rod in the Murray board is not attached directly to the inclined leg, but to a locking device which, in turn, is directly attached to the inclined leg. This device enables the operator to in-

crease the tension of the rod and bind and hold the structure more securely together; but it does not essentially change the function, or differentiate the "tie rod" in the Murray patent from the "brace of two relatively movable sections" in the Springer patent. It is an added element, and the defendant is doubtless entitled to protection from its infringement, but this added element does not give the defendant the right to use plaintiff's invention. Western Elec. Co. v. La Rue, 139 U. S. 607, 11 Sup. Ct. 670, 35 L. Ed. 294; Carr v. Rice, 1 Fish. Pat. Cas. 209, Fed. Cas. No. 2,440; Roemer v. Simon (C. C.) 20 Fed. 197; Filley v. Stove Co. (C. C.) 30 Fed. 434; Williames v. Barnard (C. C.) 41 Fed. 358; Cochrane v. Deener, 94 U. S. 786, 24 L. Ed. 139; Brislin v. Carnegie Steel Co. (C. C.) 118 Fed. 597.

[2] The claims made in the patent are to be construed separately to ascertain whether there is an infringement. Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co. (C. C.) 34 Fed. 893, 894; United Nickel Co. v. Cal. Elec. Wks. (C. C.) 25 Fed. 475–479; 30 Cyc. 975b. This rule obtains, even where one claim is broader and more general than others, which more specific claims may be included in the more general. Bresnahan v. Tripp Giant L. Co., 102 Fed. 899, 43 C. C. A. 48; 30 Cyc. 886, 887.

[3] Nothing is found in the specifications or proceedings in the Patent Office to indicate, either that the description of the brace, as consisting of "relatively movable sections," was considered too vague, or that the patentee intended to limit his claim to that form of relative movement constituting a pivotal connection.

Complainant is entitled to the injunction prayed.