### PATILLO et al. v. ALLEN-WEST COMMISSION CO.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1901.)

No. 1,461.

1. ACCOUNT STATED—SUFFICIENCY OF COMPLAINT.

A cause of action on an account stated is founded upon the express or implied promise to pay the amount that has been found to be due on an accounting, and it is necessary in such an action to allege the ultimate facts that there has been such an accounting, and that a balance has been struck, to which the parties have mutually assented. A complaint which sets out a contract under which plaintiff claims an amount as due from defendants, and alleges that plaintiff sent defendants a statement showing the amount claimed thereunder, which was received without objection, and that defendants afterwards made a payment on the contract without objection, is not sufficient, either at common law or under a code, as a complaint on an account stated, but must be treated as a suit for the breach of the contract, the facts so alleged being merely evidentiary.

2. TRIAL—DIRECTION OF VERDICT.

Where the terms of a contract are in issue, evidence that statements of account based on plaintiff's theory of the contract were sent to defendants, which were retained, and not immediately objected to, is entitled to consideration upon such issue, but it does not justify the direction of a verdict for plaintiff, the question of the weight and effect of such evidence being for the jury in connection with all the other evidence.

3. APPEAL—DECISION AS LAW OF CASE—LIMITS OF RULE.

While the rule that an adjudication by an appellate tribunal becomes the law of the case on all subsequent trials is a wholesome one, which should be enforced, yet it should be confined to questions that were actually considered and decided, and not extended to dicta or intimations contained in an opinion which may be thought to foreshadow the views of the court on other questions.

4. USURY—WHEN QUESTION FOR JURY.

Plaintiff made advances to defendants under an agreement by which defendants were to ship cotton to plaintiff to be sold on commission. Plaintiff claimed that by the terms of such contract defendants were to ship 100 bales for each $1,000 advanced, or to pay plaintiff the commissions on such amount should the quantity shipped be less. Interest on the advances was also charged at the highest legal rate. In an action by plaintiff to recover such constructive commissions, defendants pleaded usury, and offered evidence which tended to show that it was not contemplated by the parties that they would ship the quantity required to fulfill such contract. *Held*, that the question whether such

provision of the contract, if established, was a device to cover usury, was one which should have been submitted to the jury.

Sanborn, Circuit Judge, dissenting in part.

### In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

The Allen-West Commission Company, the defendant in error, sued J. G. Patillo, G. W. Smith, J. A. Patillo, J. P. Smith, and W. N. Smith, the plaintiffs in error, who were partners doing business under the firm name of Smith, Patillo & Co., for the sum of $3,013.28, and accrued interest, basing its right to recover that amount on the following allegations, which were contained in its complaint: "That * * * in the early part of the year 1891 defendants applied to the plaintiff to transact their business as cotton factors and commission merchants at the city of St. Louis, and to make them advances of money to be used in their business * * * as the same might be needed, and agreed with plaintiff, if it would make such advances, to ship plaintiff one hundred bales of cotton for every $1,000 of spring and summer advances, and, if they should fail to ship said amount of cotton, to pay plaintiff the customary commission of $1.25 per bale for each bale they might fail to ship; and further agreed to carry out said agreement as long as they should retain and have the use in their aforesaid business of plaintiff's money and advances during the spring and summer. That thereupon plaintiff, during said year and subsequent years, transacted business with and for the defendants in their capacity as cotton factors and commission merchants, making them large advances of money for the purpose of enabling them to carry on their business and control the shipment or sale of the cotton of their customers. * * * That during the continuance of said business, down to and including the year 1893, it furnished the defendants at stated periods, and at other times when requested, statements of the accounts between them, which were received without objection. That at the end of the year 1893 plaintiff furnished defendants a statement of account showing a balance due it for advances made by plaintiff to defendants and for commissions on cotton which defendants had theretofore failed to ship to plaintiff under and in accordance with their aforesaid agreement, whereupon shortly thereafter defendants, without objection, paid plaintiff on said account the sum of $2,996.27, leaving a balance due plaintiff of $2,304.75, which sum, with interest thereon, and the further sum of $508.53, due for commission on four hundred and seven bales of cotton, which, under the understanding and agreement between plaintiff and defendants as aforesaid, defendants should have shipped to plaintiff during the season of 1893 and 1894, and did not ship, is now due by defendants to plaintiff." To the aforesaid complaint the defendants below filed an answer, wherein they specifically denied entering into the agreement aforesaid to ship 100 bales of cotton for each $1,000 of advances, and to pay the plaintiff a commission of $1.25 a bale for each bale less than the aforesaid number which they might fail to ship; and wherein they specifically denied that they had agreed to carry out said agreement as long as they should retain and have the use of any of the plaintiff's money. They also denied that the plaintiff during the year 1891 and subsequent years made them large advances under the aforesaid agreement, but averred, on the contrary, that the last advance made to them was in February, 1892, after which time no more money was advanced. They admitted the receipt from the plaintiff of several statements of account down to and including the year 1893, but averred that, as soon as they knew that the plaintiff was charging them with commissions on cotton which had not been shipped, they denied the correctness of any such charge, and ceased to accept any further advances, and commenced paying the plaintiff the amount which was due to it as fast as they could. The defendants admitted the receipt of a statement of account from the plaintiff at the end of the year 1893, which showed a charge against them for commissions on cotton that had not been shipped; and they admitted that they made a payment to plaintiff in the sum of $2,996.27 after the receipt of such statement. They denied the averment, however, that such payment was made without any objection on their part, and alleged, to the

contrary, that in February, 1894, they tendered to the plaintiff a check for the sum of $3,000, if it would give them a receipt in full of their account up to that date,—that amount being all, as they claimed, which was then due to the plaintiff; that this tender was refused, and that afterwards, in February, 1894, they paid the plaintiff $2,996.26, which was all that they then owed, and directed the plaintiff to apply said payment to the undisputed part of its account,—that is, to the payment of the balance due for advances actually made,—and gave directions that no part thereof should be applied to any charge for commissions for the sale of cotton which had not been shipped. The defendants further denied that they owed the plaintiff the two amounts stated in its complaint, to wit, $2,504.75 and $508.55, and averred that, to make up said sums, the plaintiff had charged the defendants on June 24, 1892, with the sum of $1,025, as and for 820 bales of cotton not shipped during the previous season, and on September 1, 1893, had charged the defendants with the sum of $1,189.75 as and for cotton which had not been shipped during the previous season, and that it had again charged the defendants on September 1, 1894, with the sum of $508.75 as and for cotton that had not been shipped pursuant to the pretended agreement during the previous season, and that these three charges, together with interest thereon, constituted the sum for which the plaintiff craved judgment. The defendants averred that the three charges aforesaid were illegal, and not founded upon any consideration, and that for all of the advances actually made by the plaintiff they had paid to it interest at the rate of 8 per cent. per annum. Some other allegations were contained in the answer, which need not be stated in the present connection. At the conclusion of the trial under the aforesaid pleadings the lower court gave the following instruction: "The defendants have offered no testimony tending to show that they did not receive in due course of mail the accounts of the plaintiff containing the charges for commissions on cotton not shipped; nor have they introduced any evidence tending to show that they objected to any item in said accounts. You are therefore instructed that the said accounts have become accounts stated, and not open to impeachment, save for fraud or mistake. No evidence of fraud has been introduced, and no evidence of mistake, save the charging by plaintiff of interest from July 1 to September 1, 1891, on the commission due on the latter date. Deducting this interest erroneously charged, you will find in plaintiff's favor for the amount sued for, with interest at 6 per cent. per annum to date." In accordance with this direction, the jury returned a verdict in favor of the plaintiff below for the sum of $4,074.15, on which a judgment was subsequently entered. To reverse this judgment the case has been brought to this court on writ of error.

J. W. House (H. A. Tillett, W. S. McCain, and F. L. McCain, on the brief), for plaintiffs in error.

J. M. Moore (W. B. Smith, U. M. Rose, W. E. Hemingway, and G. B. Rose, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is apparent from the instruction given by the trial court which terminated the action that the trial judge construed the complaint as a declaration upon an "account stated," and that he disposed of the case upon that theory. This, as we think, was an erroneous view of the pleading. The pleading in question set out the terms of a special contract of a peculiar nature, under the terms of which, as it was alleged, large sums of money had been advanced by the plaintiff to the defendants. It then averred that certain statements had been rendered to the defendants, and "received without objection," and that after the rendition of one account only, which con-

tained a charge for constructive commissions on cotton not sold, one payment had been made by the defendants "without objection." A pleading in such a form cannot be regarded as a good declaration upon an "account stated," either at common law or under the Code. At common law it was necessary to aver that the defendant on a certain day was indebted to the plaintiff for a certain sum of money found to be due to the plaintiff on an account then and there stated between them which the defendant promised to pay. The cause of action in such cases is founded upon the express or implied promise to pay the amount that has been found to be due upon an accounting, and it is necessary in such actions to allege the ultimate facts that there has been such an accounting and that a balance has been struck, to which the parties have mutually assented. The minds of the parties must meet when an account is stated the same as when any other agreement is made; that is to say, it must be conceded by each that a certain sum is due from one to the other. Charman v. Henshaw, 15 Gray, 293, 294; Railroad Co. v. Kimmel, 58 Mo. 83; Stenton v. Jerome, 54 N. Y. 480, 484; 1 Chit. Pl. (16th Am. Ed.) p. 447; 1 Am. & Eng. Enc. Law (2d Ed.) pp. 437, 444, 445. How the ultimate facts aforesaid may be established by testimony is a different question; but a complaint cannot be held to be sufficient, which, without alleging the ultimate facts above stated, merely recites evidence which has some tendency, or even a strong tendency, to establish them. This is the rule which obtains under the Code as well as at common law, and it has been held, wherever the question has been mooted, that an allegation that an account has been delivered by the plaintiff to the defendant, and received by the latter without objection, there being no further averment as respects the accounting, falls far short of stating a good cause of action on an account stated. Emery v. Pease, 20 N. Y. 62, 64; St. Louis Lager-Beer Bottling Co. v. Colorado Nat. Bank, 8 Colo. 70, 5 Pac. 800; Ward v. Farrelly, 9 Mo. App. 370. It has been decided, however, that a declaration upon an account stated may be sustained where it contains an allegation that an account was stated between the plaintiff and the defendant, and that a certain balance was found to be due, although the pleader fails to allege a promise to pay. This is upon the theory that the law will imply the promise from the fact that an account was stated, and a balance was found to be due. Mine & Smelter Supply Co. v. Parke & Lacy Co. (decided at the present term) 107 Fed. 881; Heinrich v. Englund, 34 Minn. 395, 26 N. W. 122; Bouslog v. Garrett, 39 Ind. 338. The doctrine above stated is by no means technical, but rests upon the ground that, when an account has been stated between two persons, and a balance agreed upon, it gives rise to an independent cause of action, which rests upon a new consideration, namely, the fact that the parties have mutually waived such objections as they may have had to each other's accounts. The items of the account become merged in the balance that has been struck so as to preclude inquiry as to any of the original items of indebtedness, unless the account is surcharged and falsified on the ground of fraud, illegality, or mistake. (See authorities above cited.) It is also well settled, in accordance with the general rule that a

litigant cannot declare upon one cause of action and recover upon another, in other words, that a plaintiff cannot recover as upon an account stated if his complaint fails to state a cause of action of that nature. Machine Co. v. Wilson, 39 Minn. 467, 40 N. W. 571; Packet Co. v. Platt, 22 Minn. 413.

Although the trial court found that an account had been stated, and a balance agreed upon, and although it decided the case upon that theory, yet it did not confine the testimony at the trial to the issues which properly arise in an action founded upon an account stated, namely, to testimony tending to show that there had been an accounting and an agreement between the parties as to the balance due. Without objection on either side, much evidence was introduced bearing upon the question whether the defendants made the alleged contract to pay commissions on cotton not shipped, out of which the alleged indebtedness arose; and that seems to have been the principal issue which was litigated at the trial. It was also the principal issue presented by the pleadings. The complaint averred the making of a contract to pay commissions on cotton not shipped, and the answer denied that the defendants had ever entered into such an agreement. Under these circumstances the action must be treated as one to recover damages for a breach of the alleged agreement, and it must be so treated on the present occasion, because the complaint is clearly insufficient and wanting in the necessary averments to make out a cause of action upon a stated account. Unless the complaint be treated as stating a cause of action of the kind last indicated, it fails to state any cause of action upon which a recovery can be had.

It results from the views already expressed that the primary question arising upon this record is whether the trial court was justified in saying that upon the uncontradicted evidence in the case the defendants had made the alleged contract to pay constructive commissions on cotton not shipped, and by the terms thereof were obligated to pay commissions for the sale of 2,182 bales of cotton in the aggregate which the plaintiff had neither handled nor sold. If the existence of the agreement aforesaid and the failure to ship the number of bales of cotton last mentioned were facts which were established by uncontradicted evidence, then the judgment below might be sustained, although it was entered under an erroneous view of the cause of action which was stated in the complaint. On the other hand, if there was a conflict of evidence as respects the making of the alleged agreement, or a conflict of evidence as respects the amount of cotton that had not been shipped, then the case should have been submitted to the jury. It may be conceded that a witness for the plaintiff testified to the making of the alleged contract, and that advances were made to the defendants thereunder, and it may also be conceded that certain statements of account which were sent to the defendants, and the action that was taken by the defendants with respect thereto, afforded persuasive evidence that such a contract had been made, or, at least, that the plaintiff company at an early day claimed that it had been made. But, on the other hand, there was direct and positive evidence on the part of the defendants, which was elicited from the very member of the

firm with whom the contract was said to have been negotiated, that he never entered into such a contract as was alleged, to pay constructive commissions, either with the plaintiff company or with any one else. There was other evidence which tended to show that in the spring of the year 1892—about a year after the contract was said to have been made—a traveling agent of the plaintiff company, who came to the defendants' place of business to solicit additional shipments of cotton, was advised that the defendants disputed the existence of the alleged agreement, of which they had been advised a short time previously, and that they ceased to accept further advances, and that they ceased to make shipments thereafter except to pay off prior advances. There was also testimony which tended to show that such action was taken as soon as the defendants learned that the plaintiff claimed that the prior advances had been made in pursuance of the alleged agreement, and that it would insist upon that claim. Without going further into details respecting the evidence, it is obvious, we think, that the issue as to the existence of the alleged contract on which the plaintiff's right to recover is solely dependent, inasmuch as its entire claim is for constructive commissions, was one which the court, under the pleadings and the testimony, had no right to determine, but should have submitted to the jury for its determination. The fact that statements of account had been sent containing charges for commissions on cotton not shipped, which were retained, and not immediately objected to, or not objected to for a considerable period, was evidence tending to support the plaintiff's contention; but it was not the only evidence in the case, and it did not justify the trial court in directing a verdict for the plaintiff. The jury were entitled to say, in the light of all the facts and circumstances of the case, whether such a contract as was alleged had been entered into, and advances made in accordance therewith, and whether they would regard the defendants' conduct with reference to the various statements of account as a conclusive admission on their part that it had been made, and that they were indebted to the plaintiff in the sum claimed.

Learned counsel for the plaintiff company insist, however, that the case was tried below in substantial conformity with the decision of this court when the case was before us on a former writ of error (33 C. C. A. 194, 90 Fed. 628); and that our former decision has become the law of the case, which must control the decision on the present occasion, whether the result attained is right or wrong. We are not able, however, to assent to that proposition. The substantial question presented by the record now before us, as already explained, is whether the case was properly withdrawn from the consideration of the jury. No such question arose on the former record, because the case was submitted to a jury, who returned a verdict for the defendants, finding that the alleged agreement for constructive commissions was not proven, and, as a result of that finding, that there was no indebtedness. Nor did this court on the former appeal decide the question which we have above considered,—whether the complaint stated a good cause of action upon an account stated. It is true that

some remarks were made arguendo which might be taken as indicating that the evidence which was offered on the former trial was considered sufficient to support a declaration upon an account stated if the action had been cast in that form; but it cannot be said that the former opinion is an adjudication that the plaintiff sued upon an account stated, and that it was a sufficient complaint for that purpose, and that this ruling has now become the law of the case. A fair and reasonable interpretation of the former opinion, omitting some expressions found therein which have no necessary connection with the point actually decided, is that the first judgment in favor of the defendants was reversed, and the cause remanded for a new trial, because the trial court refused to instruct the jury, as it was asked to do, concerning the weight which should be given to certain letters that had passed between the parties, and concerning the duty which was imposed upon the defendants, when they received certain letters and statements, to make their objections thereto known. It was the refusal of this request which led to the former reversal; but it was not determined that upon the facts disclosed by the former record, even if it should be conceded that they were the same as those disclosed by the present record, the court should have directed a verdict for the plaintiff. A conclusion of that sort, if it had been expressed, would not have been assented to by at least one member of the court who took part in the former decision. While the rule that an adjudication by an appellate tribunal becomes the law of the particular case on all subsequent trials is a wholesome rule, and one that should be enforced, yet the rule should be confined to questions that were actually considered and decided, and it should not be extended so as to embrace dicta or intimations contained in an opinion which may be thought to foreshadow the views of the appellate court on other questions.

By an amendment to the defendants' original answer, the contents of which have been heretofore stated, the defendants pleaded, in substance, that the alleged agreement under which the plaintiff claimed commissions on cotton not shipped—which constitutes all of the claims sued on—was corrupt and usurious, and was made with the intent to obtain a greater rate of interest than either the laws of Arkansas or Missouri allowed. The defendants offered some testimony at the trial which tended to show that the amount of cotton which they could reasonably expect to ship in any one year at the time the alleged contract was made would not, in any event, exceed 800 bales, and possibly not more than 600 bales, and that such advances as were made in the spring of 1891 would necessitate the paying of constructive commissions on a large amount of cotton. In view of this plea, the defendants, at the conclusion of the trial, requested the court to give the following instruction, in substance: That, if the jury believed from the evidence that the defendants in the spring of 1891 did agree with the plaintiff to ship it cotton to the extent of 10 bales for every $100 advanced to it, and upon a failure to ship such cotton they were to pay plaintiff at the rate of $1.25 per bale for cotton not shipped, and that the plaintiff advanced the defendants about $15,000, which, under the contract,

would have required the shipment of 1,500 bales; and if they also believed that at the time of making the contract, if it was made, it was not reasonably expected by the plaintiff that the defendants could ship such an amount of cotton,—this fact would be a circumstance to be considered in determining the question of usury; and if they found that the contract, so far as it related to the payment of $1.25 per bale for cotton not shipped, was a mere scheme or device concocted by the parties to cover up a usurious charge for the loan of money, and thereby obtain a greater rate of interest than that authorized by law, then such contract could not be enforced. Inasmuch as the case must be remanded for a new trial for reasons already stated, we think it proper to observe that if, on the next trial, the facts are substantially the same as those disclosed by the present record, such an instruction as is above outlined should be given, leaving the jury to determine whether the alleged contract, if it was in fact made, was made in good faith, or was made without any expectation that the requisite amount of cotton would be shipped to cover the advances, and whether the contract was, as stated in the instruction, a mere device to secure a usurious rate of interest. It appears that the highest rate of interest was charged for such advances as were made, and, in addition thereto, $1.25 upon each $10 that was not represented by a shipment of one bale of cotton. Under these circumstances we are of opinion that it was properly a question for the jury to decide, in the light of all the facts and circumstances, whether the contract was not usurious. Cockle v. Flack, 93 U. S. 344, 23 L. Ed. 949; Harmon v. Lehman, 85 Ala. 384, 5 South. 197, 2 L. R. A. 589; McKenzie v. Garnett, 78 Ga. 257; Shattuck v. Clark (Tex. Civ. App.) 34 S. W. 404; Uhelfelder v. Carter's Adm'r, 64 Ala. 532.

There are no other questions presented by the record which we deem it necessary to consider on the present occasion. For the reasons disclosed above, the judgment below must be reversed, and the cause remanded for a new trial. It is so ordered.

SANBORN, Circuit Judge (concurring). "Where an itemized account showing a balance is duly rendered, the party receiving it is bound within a reasonable time to examine the same, or procure some one to examine it, and object, if he disputes its correctness. If he omit to do so, he will be deemed, from his silence, to have acquiesced, and will be bound by it as an account stated, in the absence of fraud or mistake. Lockwood v. Thorne, 11 N. Y. 170, 62 Am. Dec. 81; Davenport v. Wheeler, 7 Cow. 231; Wiggins v. Burkham, 10 Wall. 129, 19 L. Ed. 884; Philips v. Belden, 2 Edw. Ch. 1; Langdon v. Roane's Adm'r, 6 Ala. 518, 41 Am. Dec. 60; Oil Co. v. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. Ed. 319; Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811. This is especially true in respect to accounts rendered between merchants, and between merchants and their factors. Manufacturing Co. v. Starks, 4 Mason, 297, Fed. Cas. No. 11,802; 1 Am. & Eng. Enc. Law, 121." Porter v. Price, 80 Fed. 655, 26 C. C. A. 70, 72, 49 U. S. App. 295, 300; Atkinson v. Allen, 71 Fed. 58, 60, 17 C. C. A. 570,

572, 36 U. S. App. 255, 260; Commission Co. v. Patillo, 33 C. C. A. 194, 90 Fed. 628, 632. Proof of the facts that an account is stated by one merchant to another, who is his debtor, and is received and retained by the debtor without objection, therefore constitutes a good cause of action. It necessarily follows that the pleading of these facts under the Code, which prevails in the state of Arkansas, and declares that the complaint shall contain only "a statement in ordinary and concise language, without repetition, of the facts constituting the plaintiff's cause of action" (Mansf. Dig. 1884, § 5026), is a good plea of an account stated. Moreover, it is too late to aver in this court for the first time that the complaint in this action does not sufficiently plead a stated account. It is an invariable rule of practice that an objection to the sufficiency of a complaint which might have been fatal on demurrer will not be sustained when made for the first time in an appellate court, if the facts material to support the judgment or decree are fairly inferable by any reasonable intendment from what is alleged in the pleading. Adam v. Norris, 103 U. S. 591, 595, 26 L. Ed. 583; Lincoln v. Iron Co., 103 U. S. 412, 415, 26 L. Ed. 518; Railroad Co. v. Lindsay, 4 Wall. 650, 656, 18 L. Ed. 328; Ankeny v. Clark, 148 U. S. 345, 355, 13 Sup. Ct. 617, 37 L. Ed. 475; Morrow Shoe Mfg. Co. v. New England Shoe Co., 6 C. C. A. 508, 57 Fed. 685; Loewer v. Harris, 6 C. C. A. 394, 57 Fed. 368; Herrick v. Leveller Co., 8 C. C. A. 475, 60 Fed. 80; Manufacturing Co. v. Mellon, 7 C. C. A. 439, 58 Fed. 705; Railway Co. v. McLaughlin, 17 C. C. A. 330, 70 Fed. 669; Drake v. Barton, 18 Minn. 462, 444 (Gil. 414). The facts material to support the judgment below on the ground that there was an account stated between the parties are not only fairly inferable from the complaint, but are clearly set forth therein. The case has been twice tried without objection to the sufficiency of this pleading. It was reversed by this court on the first trial upon the express ground that the evidence of the account stated was pertinent to the issue, and conclusive. This court said in closing the opinion:

"If the law will presume an agreement from silence in any case, we think it will in this case, and that the accounts which have been rendered by the plaintiff, and received by the defendants without objection, must be considered as stated or settled accounts, and as liquidated by the parties, as fully so as if they had been signed by both. The balance is a debt as a matter of contract implied by the law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it." 90 Fed. 622, 33 C. C. A. 198.

In my opinion, both upon general principles of law and for the reason that this has become the law of the case under the decision in 90 Fed. 628, the complaint in this case states a good cause of action upon an account stated, and it should be tried upon that theory. I concur in the reversal on the ground that the evidence at the last trial was not conclusive that the plaintiffs in error were estopped from contesting the item of $508.75, due July 1, 1894, by the accounts that were rendered. But under the decision in 90 Fed. 628, it seems to me that the law of the case is, and ought to be, that the accounts received by the plaintiffs in error estop them from contesting the validity of their debt for the two commissions of $1,025, due June 24, 1892, and $1,198.75, due September 1, 1893.