PATILLO et al. v. ALLEN–WEST COMMISSION CO.

(Circuit Court of Appeals, Eighth Circuit.   August 8, 1904.)

No. 1,920.

1. LIMITATION OF ACTIONS—AMENDMENT OF PLEADING—RELATION TO BEGINNING OF ACTION.

An amendment to a petition, which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point.   But an amendment which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies although the two causes of action arise out of the same transaction, and, by the practice of the state, a plaintiff is only required in his pleading to state the facts which constitute his cause of action.

2. SAME—RULE APPLIED.

A complaint stated facts from which the law raises the legal presumption of a promise to pay the balance of an account stated, and demanded judgment for that amount.   An amendment was made to this complaint by adding to it an averment of a promise to pay the balance of the stated account.   *Held*, this amendment presented no new cause of action, but simply expanded the allegations in support of the cause of action presented in the original complaint, and the amendment related back to the commencement of the action, where the running of the statute of limitations against the cause of action upon the account stated ceased.

3. ACCOUNT STATED—ESTOPPEL TO DENY LIABILITY.

An account stated, conceded to disclose some just indebtedness received and retained by the debtor without objection for an unreasonable time, estops him, in the absence of fraud or mistake, from denying his liability for all the items it contains, and raises the legal presumption of his promise to pay the balance.   A consideration and legal liability for each item outside of the stated account is not essential to sustain a cause of action to recover its balance.   The balance is one debt, regardless of the items, and a consideration for that debt is sufficient.

4. TRIAL—COURT MAY WITHDRAW QUESTION OF FACT FROM JURY.

Where the evidence upon a question of fact is so clearly preponderant, or of such a conclusive character, that the court would be bound, in the

---

¶ 3. See Account Stated, vol. 1, Cent. Dig. §§ 31, 42.

exercise of a sound judicial discretion, to set aside a finding in opposition to it, it is its duty to withdraw the question from the jury and direct their finding.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

J. W. House (H. A. Tillett and M. House, on the brief), for plaintiffs in error.

J. M. Moore (G. B. Rose, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This is an action by the Allen-West Commission Company, the plaintiff below, a corporation, to recover of Smith, Patillo & Co., a partnership, a balance of an account current. This balance consists of three items—one of $1,025, due September 1, 1892; one of $1,198.75, due September 1, 1893; and one of $508, due September 1, 1894—for commissions on cotton not shipped, at the rate of $1.25 per bale. At the trial below the jury allowed the first two items upon the ground that they were parts of a stated account between the parties, and disallowed the third item, which is no longer in issue in this case.

The alleged error in the trial upon which the defendants place their chief reliance is that the cause of action upon the stated account arose in 1893, that it was barred by the statute of limitations in either three or five years thereafter, and that, although this action was commenced on April 25, 1895, the cause upon the stated account was first presented to the court below by an amendment to the complaint on July 15, 1903. This cause of action was undoubtedly barred by the statute of limitations if the effect of the amendment was not simply to vary or expand the allegations in support of the cause of action pleaded in the original complaint, but to introduce a new or different demand, not before presented in the pending suit. The rule of law upon this subject is that "an amendment to a petition which sets up no new cause of action or claim and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, not before introduced or made in the pending suit, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed." Whalen v. Gordon, 95 Fed. 305, 309, 37 C. C. A. 70, 74; Railway Co. v. Wyler, 158 U. S. 285, 289, 298, 15 Sup. Ct. 877, 39 L. Ed. 983; Railway Co. v. Cox, 145 U. S. 593, 601, 606, 12 Sup. Ct. 905, 36 L. Ed. 829; Sicard v. Davis, 6 Pet. 124, 8 L. Ed. 342; Van De Haar v. Van Domseler, 56 Iowa, 671, 676, 10 N. W. 227; Jacobs v. Insurance Co., 86 Iowa,

145, 53 N. W. 101; Buel v. Transfer Co., 45 Mo. 563; Scovill v. Glasner, 79 Mo. 449, 453; Crofford v. Cothran, 2 Sneed, 492; Railroad Co. v. Jones, 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141, 41 Am. St. Rep. 278; Eylenfeldt v. Steel Co., 165 Ill. 185, 46 N. E. 266; Railroad Co. v. Campbell, 170 Ill. 163, 167, 49 N. E. 314; Christy v. Farlin, 49 Mich. 319, 13 N. W. 607; Flatley v. Railroad Co., 9 Heisk. 230, 237; Buntin v. Railway Co. (C. C.) 41 Fed. 744, 749; Newton v. Allis, 12 Wis. 378; Railroad Co. v. Smith, 81 Ala. 229, 1 South. 723. The only question here presented, therefore, is whether the amendment merely expanded the allegations in support of a cause of action upon a stated account which was propounded in the original complaint, or introduced a new and different cause and made a new demand which was not before presented in this action.

This is the third appearance of this case in this court, and its history is interesting. In the original complaint the plaintiff alleged that in the early part of the year 1891 the defendants applied to it to advance moneys to them to be used in their business of purchasing cotton, and agreed to ship to it 100 bales of cotton for every $1,000 advanced to them in the spring and summer of each year, and that, if they failed to ship that amount, they would pay to the plaintiff $1.25 for each bale of the deficiency each year as long as they retained the use of the plaintiff's money; that during the year 1891 and during subsequent years the plaintiff transacted business with the defendants, and advanced money to them; that "during the continuance of said business down to and including the year 1893 it furnished the defendants at stated periods, and at other times when requested, statements of the accounts between them, which were received without objection; that at the end of the year 1893 plaintiff furnished the defendants a statement of account showing a balance due it for advances made by the plaintiff to the defendants, and for commissions on cotton which defendants had theretofore failed to ship to plaintiff under and in accordance with the aforesaid agreement, whereupon shortly thereafter defendants, without objection, paid plaintiff on said account the sum of $2,996.27, leaving a balance due plaintiff of $2,504.75, which sum, with interest thereon, and the further sum of $508.53, due for commissions on 407 bales of cotton, which under the understanding and agreement between plaintiff and the defendants, as aforesaid, defendants should have shipped to plaintiff during the season of 1893 and 1894, and did not ship, is now due by the defendants to plaintiff." The defendants, by their answer, denied the agreement, admitted the advances and the receipt of the statements of account, averred objections to them, and that the agreement was usurious. There was a trial, and a verdict for the defendants. Thereupon the plaintiff removed the case to this court, where the judgment was reversed because the court below refused to charge the jury that, in view of the plaintiff's letters and statements of account, and the silence of the defendants, they could not dispute the item of $1,025 charged in the statement rendered them for commissions on cotton not sold. Allen-West Com. Co. v. Patillo, 90 Fed. 628, 630, 631, 632, 33 C. C. A. 194, 196, 197, 198. In the statement preceding the opinion

then rendered will be found a copy of the complaint, and in the opinion a review of the letters, statements of account, and acts of the parties which led to this decision. At all the trials there have been introduced in evidence a statement of account rendered to the defendants on July 1, 1892, which contained the item, "To Com. on 820 b/c at $1.25, 1025," and disclosed a balance of $15,388.14 due from the defendants to the plaintiff, and a statement of account rendered December 20, 1893, which contained the item, "To Commissions on 959 b/c, deficiency season 1892-93, should have shipped 1033 b/c, while you only shipped 74 b/c C 1.25 1198.75," and presented a balance due from the defendants to the plaintiff of $5,364.-58. In the first opinion rendered in this case this court said:

"As we view it, this was a factor's charge for commission under his contract with his principal, and related to the same subject-matter as the interest and other commissions; that it could not have been omitted from the account stated without thereby waiving the right to it, and binding the plaintiff to a stated account which did not include it; and when the defendants received it, accepted it, and acted and permitted the plaintiff to act upon it, it became a stated account against them, which could only be set aside by proof of fraud or mistake. * * * If the law will presume an agreement from silence in any case, we think it will in this case, and that the accounts which have been rendered by the plaintiff, and received by the defendants without objection, must be considered as stated or settled accounts, and as liquidated by the parties, as fully so as if they had been signed by both. The balance is a debt as a matter of contract implied by the law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it. Atkinson v. Allen, 71 Fed. 58, 60, 17 C. C. A. 570, 572, 36 U. S. App. 255. 260; Porter v. Price, 80 Fed. 655, 657, 26 C. C. A. 70, 72, 49 U. S. App. 295, 300"; 90 Fed. 631, 632, 33 C. C. A. 196, 197, 198.

Upon the second trial the Circuit Court instructed the jury to return a verdict for the plaintiff for the amount of the three items in dispute, less a small amount of interest, upon the ground that no objection to the account rendered and no fraud or mistake in them had been proved. The defendants sued out a writ of error, and when it was presented to this court the record disclosed evidence that timely objection had been made to the third item of $508.75, which was due September 1, 1894, so that it was necessary to again reverse the judgment. The majority of the court expressed the view, in which the writer of this opinion has never been able to concur (Patillo v. Allen-West Com. Co., 108 Fed. 723, 730, 731, 47 C. C. A. 637, 644, 645), that, although the complaint stated the facts from which a legal presumption of a promise to pay the balance of a stated account necessarily arises, it failed to state a cause of action upon an account stated, because it did not contain an express averment of the legal conclusion, the promise to pay the balance.

When the case returned to the court below for the third trial, and on January 15, 1903, the plaintiff amended its complaint by adding to the allegations which it originally contained the averment that at the various times when the defendants received the statements of account without objection they promised to pay the balances which appeared thereon to be due. This is the amendment which is challenged upon the ground that it introduced a new

and independent cause of action not before presented in this suit. Conceding that the opinion of the majority of this court at the last hearing that the original complaint did not contain a perfect statement of a cause of action upon a stated account because it did not contain the averment of the implied promise to pay the balance is now the law of this case, this averment cannot be said to have introduced a new or different cause of action, or to have made a new or different demand from those presented in the original complaint. The demand under the amended complaint is for the same items and for the same amount as that under the original complaint. The cause of action upon the stated account was so clearly propounded in the first complaint that the court below twice tried it, and this court once reviewed its trial, before any defect in its statement was discovered. The fact that the complaint stated two good reasons— the alleged contract and the stated account—why the plaintiff was entitled to a recovery, in no way detracts from the sufficiency of the statement of either cause of action. The truth is that the averment of the promise to pay the balances of the accounts rendered, which the law implied from the facts stated in the original complaint, was nothing but the expansion of the allegations in that pleading in support of the cause of action upon the account stated. It was germane to the cause of action stated in the original complaint. It wrought no departure from that pleading. The amendment which introduced it was properly allowed by the court below, and it related back to the commencement of the action where the running of the statute of limitations against the cause of action upon the account stated ceased. The contention that this cause of action was barred by the statute of limitations because it was not presented until this slight amendment to its statement was introduced cannot be sustained.

G. W. Smith, one of the defendants, testified that in the latter part of the summer of 1893 he told Exall, an agent of the plaintiff, that it was claiming that he made a contract to pay commissions on cotton not shipped, that the plaintiff had charged these commissions in some account rendered, that he had never made an agreement of this nature, and that the defendants could not and would not pay the commissions. This is the only evidence in the record of any objection to the statements of account or to the commissions for cotton not shipped prior to the month of February, 1894. Exall testified that Smith never had any such conversation with him. Allen, a witness for the plaintiff, testified, and Smith denied, that the latter agreed to pay commissions on cotton not shipped in the spring of the year 1891. The accounts which contain the charges of the two items of commissions in controversy were sent to the defendants on July 1, 1892, and December 20, 1893, respectively. In a letter to the defendants dated April 3, 1891, the plaintiff wrote: "Your Mr. George Smith has been here, and has returned home. He informed us that from this time forward your firm will do all your business with us and will guarantee us a bale of cotton for every $10 of spring and summer advances." On October 29, 1891, the plaintiff wrote: "Your agreement was to ship

us a bale of cotton for every $10 of the spring and summer advances, or pay the commission on the same. Our desire is always to do the work by selling the cotton. We never like to charge commissions when the cotton has not been shipped, but, so far, we have received bills of lading for only 200 and odd bales." On February 24, 1892, plaintiff wrote defendants that they owed it $13,138.50, and requested a settlement. On April 11, 1892, the defendants wrote the plaintiff to sell all their cotton, and that they would make some satisfactory arrangement with it. On May 27, 1892, the plaintiff wrote to the defendants that, if they desired to keep its money, it wanted a clear understanding, such as it had the preceding year, that they would ship it 100 bales of cotton for every $1,000 carried over during the spring and summer, or would pay it $1.25 per bale for any deficit up to that amount; and the defendants answered that as soon as the plaintiff had sold all their cotton they would have a settlement, and make their account satisfactory. On June 24, 1892, the plaintiff wrote to the defendants that it charged them commissions as agreed between Smith and it at the rate of 100 bales of cotton for every $1,000 carried over the spring and summer; that they and G. W. Smith & Bro. owed it on September 1, $15,219; that they should have shipped 1,522 bales; that they did ship only 702 bales; and that the plaintiff was entitled under the agreement to commissions on 820 bales at $1.25 per bale, or $1,025, which it had charged to them. On July 1, 1892, it sent them a statement of account which contained this charge. On the next day the defendants wrote to the plaintiff a letter in which they remitted $5,000, and made no objection to the charge. On November 12, 1892, they wrote that they had been trying to get some cars to ship some cotton, and as soon as they could get them they would ship. On March 29, 1893, the defendants wrote to the plaintiff: "We write to know if we pay you, say $5,000, about the middle of April, how would it suit you to carry the balance over another year." The plaintiff answered on April 1, 1893: "If you pay us the $5,000 in the middle of April and guarantee to ship us 100 bales of cotton for every $1,000 carried over, or advanced in the spring and summer (which are the very best terms we can give anybody) of course we will carry the balance over for you, and if you fail to ship us cotton pay us commissions." The defendants replied: "You will please find $4,500 for our credit in account. Will write you again soon." On June 19, 1893, and again on November 11, 1893, the defendants wrote that, if they could get some money, they would pay the plaintiff all they owed to it. On December 15, 1893, the plaintiff sent the account which contained the second item of commissions upon cotton not shipped, and on February 15, 1894, the defendants wrote to it, apparently for the first time, that they never expected to pay it any money upon cotton not shipped, unless the courts decided otherwise.

It is assigned as error that in this state of the case the court charged the jury that there was no evidence to show that any objections were ever made to the two accounts within a reasonable time, and that it refused to instruct them that they should consider

and determine whether or not G. W. Smith objected to the commissions on cotton not shipped in the latter part of the summer of 1892, and whether or not this was an objection to the accounts within a reasonable time. But when the evidence upon a question of fact is so clearly preponderant, or of such a conclusive character, that the court would be bound, in the exercise of a sound judicial discretion, to set aside a finding in opposition to it, it is its duty to withdraw the question from the jury and direct its finding. Southern Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Union Pac. R. Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434; Delaware, Lackawanna, etc., Railroad v. Converse, 139 U. S. 469, 472, 11 Sup. Ct. 569, 35 L. Ed. 213. The testimony of Smith upon this question, in view of the denial of Exall, and of the writings which have been recited, and which so clearly portray the attitude of the parties during the two years when this account was current and during which the two itemized statements were rendered, is too incredible to sustain a finding that he made the complaint or objection to which he testified. The court rightly withdrew the question of timely objection to the accounts from the jury.

It is assigned as error that the court refused to instruct the jury that if they found that there was fraud or mistake in entering any of the items in the account they should deduct these items from the amount claimed by the plaintiff, and that it charged them that there was no evidence of any fraud or mistake that would justify a reexamination of the accounts, save in regard to two small items, which it specified, and directed the jury to disallow. A careful examination of the record, however, discloses no evidence sufficient to sustain a finding of fraud or mistake in the entry of any other item in these accounts. Our attention has been especially called to the testimony relative to $300 of the item of $1,025 charged in the account of July 1, 1892. This $300 consisted of a commission of $1.25 per bale on 240 bales of cotton not shipped, and it was based on a charge to the defendants on December 18, 1891, of $2,406.26, a balance of the account of the plaintiff against G. W. Smith & Bro. This $2,406.26 was the amount which G. W. Smith & Bro. owed to the plaintiff on September 1, 1891. It was the balance of the plaintiff's spring and summer advances to Smith & Bro., and this balance was charged to the defendants, who were their successors, on December 18, 1891. There was no agreement between G. W. Smith & Bro. and the plaintiff that the former should pay commissions on cotton not shipped. The plaintiff asserted and the defendants denied that this $2,406.26 advanced to Smith & Bro. in the spring and summer of 1891 fell within the disputed agreement between plaintiff and defendants. The evidence in the record discloses the fact that the right to charge every dollar of the commissions was in dispute at the trial as well as the right to charge that portion of the commissions which was based upon the $2,406.26. There was, however, no evidence that the charge of the $300 commissions based upon this balance was fraudulently or unintentionally made in the itemized account delivered to the defendants, or

that the latter did not receive the same notice of this charge, and did not become bound to pay it by their failure to object to it as firmly as they were to every other portion of the $1,025 of which it formed a part. Indeed, the evidence that this charge was not mistaken is full and clear. The plaintiff not only sent to the defendants the account which contained it on July 1, 1892, but on June 24th preceding they wrote them that "Smith, Patillo & Company and G. W. Smith & Brother owed us on the 1st of September, without interest, $15,219.00, so they should have shipped us 1,522 bales of cotton. They only shipped us 702 bales, so we are entitled to commissions on 820 bales, at the rate of $1.25 per bale, which was the agreement between Mr. Smith and ourselves. You probably saved money by not shipping the cotton as the market during cotton shipping time was declining, so we charge you with $1,025.00 commissions on cotton not shipped, as per agreement, which we hope you will find correct and satisfactory." There was surely no fraud, deceit, or concealment in this charge. It certainly was not made by mistake or inadvertence, for this letter shows that the amount of it was carefully computed upon the indebtedness of both Smith & Bro. and the defendants. The latter had complete notice of the charge, of the amount, and of the basis of it, and there is no evidence that it was through any mistake that they failed to object to it. There was no error in the charge of the court upon the subjects of fraud and mistake.

The question whether or not any agreement was made in 1891 to the effect that the defendants should pay commissions on cotton not shipped, the question whether or not the contracts of the parties were usurious, and the question whether or not the defendants were liable for the two items of $1,025 and $1,198.75 on an account stated were submitted to the jury for their determination. The court charged that, if there was a contract in 1891 to pay these two items, the plaintiff might recover upon that ground; and that, if the two accounts of July 1, 1892, and December 20, 1893, contained charges of these two items, and those accounts were received and retained by the defendants without making any objection to them within a reasonable time, then the plaintiff was entitled to recover these amounts whether there was any previous express contract to pay them or not. The latter portion of this instruction is assigned as error. But it is not indispensable to a cause of action for the balance of an account stated that the defendants should have been legally liable for every item in it upon some other ground before the itemized account is delivered. Such a rule would nullify the effect of the stated account, and destroy the cause of action upon it. The only legal effect and virtue of an account stated is that it estops its recipient from denying his liability for the charges it contains, whether he was actually liable for them or not, and that it raises a legal presumption that he promised to pay the balance of the account. It is the law of this case, under the decision of this court in Allen-West Commission Co. v. Patillo, 90 Fed. 631, 632, 33 C. C. A. 197, 198, as well as the general and salutary rule upon this subject, that one may become bound by virtue of an account stated

to pay charges contained therein for which he was not previously legally liable. "The balance is a debt as a matter of contract implied by law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it." 90 Fed. 632, 33 C. C. A. 198; Marye v. Strouse (C. C.) 5 Fed. 483, 496; Porter v. Price, 80 Fed. 655, 658, 659, 660, 26 C. C. A. 70, 73, 74, 75; Backus v. Minor, 3 Cal. 231; Young v. Hill, 6 Hun, 613; Bainbridge v. Wilcocks, Baldw. 536, Fed. Cas. No. 755; Freeland v. Heron, 7 Cranch, 147, 3 L. Ed. 297. There was no error in the instruction of the court upon this subject, or in its refusal to charge to the contrary.

For the same reason the challenge of the instructions of the court and of its refusals to instruct with reference to the liability of the defendants outside of the stated account to pay the items of $1,198.75 and $300, and with reference to the right of the defendants to a credit for 230 bales of cotton not credited to them in the account, cannot be sustained. The criticism of the charge and of the refusals to instruct might be worthy of consideration if the question to be considered now was whether or not there was error in the trial of the issue whether or not the charges and credits in the itemized accounts were correct. That is not the question we are now considering. The stated account estopped the defendants to deny its correctness. Counsel for the defendants concede—nay, more, they insist—that this record demonstrates the fact that the jury found that there was no agreement between the parties to the effect that the defendants should pay any commissions on cotton not shipped prior to the rendition of the itemized accounts. The evidence and the verdict of the jury sustain this contention. If there were any errors in the charge of the court or in its refusals to instruct the jury relative to the question of the defendants' liability under the alleged agreement of 1891, those errors were not prejudicial to the defendants, because the verdict was in their favor upon that issue. It is therefore useless to consider them, because error without prejudice is no ground for reversal.

The only question remaining is whether or not there was any error in the charge or the refusals to instruct as requested relative to the issue whether or not there was a stated account. Upon this issue the correctness of the items in the account was not open to dispute. The question was, in the absence of mistake and fraud, whether the accounts were received and retained for an unreasonable time without objection. Upon this issue there was no error in the instruction of the court, and, so far as the refused instructions related to this question, and were not embodied in the charge, they were either immaterial or incorrect. The answer to all the contentions of the defendants with reference to the items of the account is that upon the issue of stated account or not, where an account current of many items, some of which represent a just indebtedness, is delivered to the debtor, its receipt and retention without objection estops the recipient from denying liability for the items which it contains and the balance it discloses. It was not fatal to the cause of action upon the account that one or more of the items

in it were without consideration, provided there was a good or valuable consideration for other items which were merged in the balance. If there is a valuable consideration for the single‑debt evidenced by the balance, the promise to pay it implied by the law from the silent acceptance of the statement will sustain the action.

A careful examination of the various assignments of error to which reference has not been separately made, and of the record, satisfies us that there was no prejudicial error in the trial of this case, and the judgment below is affirmed.